Good morning. Our first case for argument today is 23-1444, Gesture v. Unified. How do I say your name, counsel? Mr. Wittenzeller, Your Honor. Mr. Wittenzeller, please come on up. Thank you. Please proceed. Thank you, Your Honor. May I reserve three minutes for rebuttal? You can try. Your Honor, my client, Gesture Technology Partners, appreciates the opportunity to be heard. We are here today and on Friday in regards to seven different IPR appeals, due in large part to the fact that Unified Patents is structured in a way to permit its paying members to circumvent certain estoppel provisions that were put into the AIA as a balance for patent owners. The first issue I'd like to address is... Wait, this isn't the case. This isn't the one that has the real party and interest question in it, is it? Both do in different flavors, Your Honor. This one does? I thought that was the next one. Well, this is the discovery question. Is this where you're seeking discovery? Correct. Okay, so you're saying that the board erred by denying discovery, where you would get real party to show who was the real party and interest. Correct. But that order was after the final written decision, right? So the order itself was the request was made before the final written decision in anticipation of the 315E1 estoppel attaching after the first final written decision on the 403 patent issue. Does your Notice of Appeal specifically identify the order that you were appealing from? Because I see that you've identified in your Notice of Appeal the final written decision and all underlying orders, but I don't see how an order issued by the board following the final written decision would be an order underlying the final written decision. Your Honor, I think it's encompassed within there. And in addition... Why? Because it pertains to the issue and what we're bringing up to the court. In addition... No, no, no, no in addition. That answer made no sense. Flesh that one out. There's a difference on whether we have jurisdiction or not. So it's really important. And your Notice of Appeal is at A2700. And if you look at that language, I'm just struggling with understanding how it would include the board's order denying the discovery. So the board actually had several orders denying it. The first one was before the final written decision. And there the board denied it as premature. So at a minimum, the appeal would be as to that. They just said, wait on this, right? I mean, you're not appealing the denial of something as premature. You're appealing the denial of the order itself, the order that said you're not going to get discovery because it's too late. Right, the two are linked, though, because first the board said this is premature. And then the board subsequently said, well, this is too late. So it's the same transaction. Do you have any case law to support that, you know, that understanding of how we would interpret your Notice of Appeal and how we would understand orders underlying a final written decision or any order? I think that's – I'm not aware of that specific transaction coming up. Can you just – just as an aside, I don't want to belabor this, but why didn't you just go to the board in connection with the Samsung re-exam? Why were you going here and not there? There's a few reasons, Your Honor. The first issue is that the board is not involved in ex parte re-examinations. It's the crew, the central re-examination unit. Another big issue is that the USPTO does not have subpoena power over parties in ex parte re-examination. Okay. Why didn't – then whatever happened to that case? Did that issue? Is that out? That case is – we have a final decision there, and it's currently on the court's docket, and we are – I think our briefing is due in the next month. And does that – that implicates the same patent claims that are at issue here? It does, Your Honor. And the issue is, one, the lack of subpoena power. All right. I don't want to belabor another suit. I'm just curious. So it's our position that the court – that Pete's had denied that request was an abuse of discretion, which this court has found previously, specifically on the rear parting and interest issue. And the court has remanded before to allow – repeatedly to allow patent owners to seek that discovery after a final decision. But not in circumstances like this? Not this particular set of circumstances relative to the appeal notice that we were discussing earlier, but in instances where the request went back after the final written decision. In fact, one case that we brought up in our briefing was that in the Ariosa PTAB decision, the board did exactly what we requested. The board actually entertained a request for additional discovery on rear parting and interest after the final written decision. And the reason that the timing works that way is because 315E1 only attaches after a final written decision has been issued. But that wasn't a circumstances here where you were really implicating the re-exam in Samsung and that issue and asking the board in the separate IPR to deal with the rear parting and interest question with regard to another independent proceeding, right? That was actually the issue in Ariosa. The PTAB did the exact same thing. In the case that we were simply following the precedent and procedures that the PTAB had previously done. Did you want to talk about the consumer means and computer means limitations? Yes, Your Honor. With respect to the computer means limitation, there are really two issues. The first has to do with the corresponding structure. Neither of the parties contested the corresponding structure for the computer means as a general purpose computer programmed with a specific algorithm. The issue is that what was identified as the alleged disclosure in Numizaki is not a general purpose computer. It's a specific hardware block or contains specific hardware blocks designed for specific purposes. They are not programmed. They're akin to application-specific integrated circuit or ASIC. They're specialized blocks. Do you think that's what it says in the specification? For example, the figure 74 is part of what the board relied on. There was expert testimony on this as well, right? Competing expert testimony? There's competing expert testimony, Your Honor. I think the picture speaks a thousand words there. There are specific blocks that perform specific functions. For example, one of the figures relied upon was figure 1. That's appendix 900. And there each block has different functions. For example, block 251 is designed to only detect fingertip position unit or fingertip position. I think they call it a PC in the specification. That's the overall unit, Your Honor. But as you see when you look at Numizaki, it's a larger PC unit with various functions. But what's been identified in the petition and relied upon in the board's final written decision is a specific hardware block in the feature generation unit. And that is not a general purpose computer. It's specific hardware designed and essentially burned in silk, and it performs specific functions. It is not programmable. It's certainly not for general purpose. It can't be programmed to do something else, perform another function. In addition, with respect to the computer means, the claims require that the computer means analyze said image with, of course, said image referring back to the claimed camera. The issue here is that that specific image is not analyzed by the computer means. Rather, it's a synthetic image. That's the difference between two images captured at two times under two different lighting conditions. The computer means, alleged computer means in Numizaki cannot perform those functions on a single image. They necessarily can only operate on that synthetic image, which is a limitation of Numizaki. It does not meet the claim limitations. Finally, with respect to the computer means, our position is that the disclosure is very specific about the nomenclature it uses. It walks through for seven embodiments and uses the term photo detection unit. Then in the final embodiment, the handheld embodiment, it changes language to photo detection sensor unit. There's a difference between a sensor and a camera, and Numizaki very meaningfully differentiates between those embodiments. It serves improper to rely on the earlier embodiments for embodiment eight under an anticipation ground. But embodiment eight incorporates the earlier embodiments, right? Using different terminology. I believe it refers back, but there's different terminology used and specifically calls out this photo detection sensor unit instead of merely referring back and using the same terminology. So you think it was an error for the board to interpret or to conclude that embodiments one through seven, which use, what's the term they use? Photo, I can't give them a straight photo. So for the first seven embodiments, it's photo detection unit 102. And then in embodiment eight, it's called, there's something else, photo? Photo detection sensor unit. Photo detection sensor unit? Correct. Okay, and so you think it was a mistake for the board to conclude that embodiments one through seven, that its photo detection unit is the same as the photo detection sensor unit in eight? Yes. Or could it be that it's a subset, that the thing in one through seven is a subset of what is covered in eight? I mean, is that, I mean, that kind of seems like what the board found to me. Is that not right? I think it's an error, Your Honor, because. . . It can't just be an error. It has to be no substantial evidence because it's a fact finding about what a piece of prior art discloses. And, you know, that's hard. Look, I'm generally with you. If the same patent uses two different words, it's talking about two different things. But I don't get to review things de novo, so I have to give substantial evidence to the board. And those two things sound an awful lot alike, and they're described with similar functionality in the description of those two, of the different embodiments and stuff. So why isn't that substantial evidence that causes me to leave alone something I may not have done on my own or agreed with if I was de novo review? Certainly, Your Honor. So I think there's a few things that come into it. First, the board really didn't rely on much evidence to begin with. There was competing expert testimony. And when you look through Numizaki, it's not just the fact. . . But that problem, when you say there's competing expert testimony and a substantial evidence review, unfortunately, that doesn't help you, right? Right. But Numizaki itself, I think, shows that this wasn't an unintentional error. The change in terminology was made specifically when the embodiments changed from large-scale devices to a handheld device. So it's intentional and is indicative of the fact that the previous seven embodiments disclosure of the photo detection unit 102 is not compatible with and is not in that eighth embodiment for a handheld device. I know, but the problem you have is on its face Numizaki says in eight that it, what does it say, something like, it contains the information from the input generation apparatus as from embodiments one through seven. Whether the board was right or not, ultimately, whether what you're saying is a more accurate reading of it isn't the question. It's is there substantial evidence. And I don't see how I'd get around that. Understood, Your Honor. I would rely again on the fact that it made an intentional shift in terminology when it got to a significantly different embodiment, which is a handheld embodiment. Do you want to save the rest of your time for rebuttal? I would, Your Honor. Thank you. Okay, sure. Is it McComas? Correct. Ms. McComas, please proceed. Good morning. May it please the Court, Debbie McComas on behalf of Unified Patents. I want to just add one quick thing to the RPI discussion and the discovery. Judge Stoll, you pointed out that that order came after the final written decision. I would point out that the earlier determination that they were going to defer is not actually in this record. It's not anything that was designated. But I would point out at 557, which is what my opponent points to, with respect to that background and the deferral, the board said we denied the request as premature with leave for patent owner to renew the request after issuance of the final decision. This was based on patent owner's statement that its request only applied after the final decision issued. So it was effectively the patent owner's request to wait and defer that issue until later. Would they have had, do we have jurisdiction to review an order after the final decision? No. Well, why not? If they put it in the notice of appeal, why wouldn't we have had it reviewed? Well, I think what Judge Stoll pointed out that I had not caught was that it actually isn't part of what they noticed. But if it was in the notice of appeal, we would have jurisdiction over it, wouldn't we? Oh, absolutely. Absolutely. And so you think now that since it wasn't in the notice of appeal, we don't have the jurisdiction to decide that issue? Is that your now position? I think that's right. I think that's right. But even if you go there, I think it's an abuse of discretion standard. The board said you knew this from the patent owner's preliminary response was an issue, and you didn't go there. So they had, it was completely within their discretion to deny it, even if the court chose to review it. And you think we have a choice to review it? I guess what I'm trying to get at is this, is this truly to our jurisdictional boundaries, in which case we have no choice, or is this one of, there are many instances where we have the ability to waive things, for example, if, you know, we have choices. Like we can say something is forfeited, but we can decide it even if it was forfeited, right? Is this one of those kinds of things? No, I think if you didn't put it in your notice of appeal, and it's not within the scope of what you appealed, then you actually do not have jurisdiction to review it. Okay. I want to jump quickly to the merits argument. So as Your Honors pointed out, this is, it's anticipation. Anticipation is very fact intensive. It is under substantial evidence review, and there's nothing being challenged here that the Board didn't support with facts. I'm happy to answer any specific questions the Court has. Why don't you address just the final point your friend was making about the use of different language. And typically in our analysis, as the Chief pointed out, when people use different terms, we construe them as meaning different things. So why we shouldn't do that with respect to embodiment aid? Right, right. I think, as Your Honors have already pointed out, what's very clear in the language with respect to the eighth embodiment is that the eighth embodiment incorporates the structures that are taught from figures one and figure two. And I think that's very clear. And I'm happy to point to that. That is at column 50 on appendix 1005. And it talks about all of the figures. What lines would you identify? Yes, ma'am. It's at lines 19, beginning at line 19. Referring now to figure 74 to figure 78, figure 79, excuse me, and our handheld device is figure 78, the eighth embodiment of the present invention will be described in detail. This eighth embodiment is directed to a system configuration incorporating the information input generation apparatus of the present invention as described in the above embodiments. And we know from figure two, which is at appendix 881, that our P.M.R. means, that's at issue here. 881? I think that's not the same pattern anymore. What do you mean? I'm at the figure two. It's a fairly long pattern. I'm sorry. Okay, got it? Yes. Okay. We know from figure 881, I mean from appendix 881, figure two, that our P.M.R. means that we're talking about here is the box, the photo detection optics 107 and the reflected light extraction unit 102, that whole box. And that's expressly incorporated in what I just read you from appendix 105, and it clearly says it applies to all the figures. So if I remember correctly, the board said that figures 74 to 79, in their view, were the different, I forget the words they used, but the different implementations of the system that was described earlier. I think that's right. And it is super confusing that there's a reference, even if you look in our boxes, that talks about the first photo detection unit, the second photo detection unit. So they use the term photo detection pretty frequently in here. But if you look, I think also consistent with the board's findings, and I had this up just a moment ago, there is discussion, they refer to the photo detection section at times early in the spec. Column 10, I'm now looking at line 44. And that's not the.  Yes, excuse me. Appendix 985, column 10. There they use the word photo detection section. And if you look at the description, they're clearly talking generally about how the photo detection section works. So there's a little bit of loose language, but I think it is clearly appropriate. Is the ultimate question we're looking about is whether it's a camera? Is that the question? Okay, this is. I think you'll have to ask on rebuttal to make sure that the. What the board said is it's clear from the disclosure that knew Mosky that photo detecting refers to obtaining an image, which is what the patent owner asserts is the function of a camera. Right, I think that's right. Right, the board has clearly found this is a camera, that it teaches a camera. And there's substantial evidence to support that. I would suggest that is one argument that Gesture Tech has made on appeal. The other argument, if I understand it, it's always hard to make somebody else's argument for them. If I understand the other argument, the question is whether or not the computer piece, the future data generation unit, then analyzes the image. I mean, the only difficulty in this case, it seems to me, is that Embodiments 1 through 7 say photo detection unit, and Embodiment 8 says photo detection sensor unit. And, you know, that generally would cause me pause. But this is substantial evidence review, and Numizaki expressly says 8 incorporates in 1 through 7. So I think the case on this point is over. Is there anything else that you need to address with us?  And it's a good plan. Thank you. Thank you. Thank you. Okay. Mr. Whitten-Zellner, you have some rebuttal time. I want to remind you before we start your time that your rebuttal is limited to what you discussed in your opening and what she discussed in her response, and that there are many issues you all didn't cover, many of which are still in the next to come. But I just want to make sure you abide by the rules, which is you're limited to what was already discussed and you can't branch in your rebuttal out into the other issues. So come on up, and whatever you have to say about these issues, we'll happily hear. Thank you, Your Honor. Two brief points, again, on the discovery issue. First, I did have an opportunity to review the Notice of Appeal, and we do ask for review of the Board's factual findings, conclusions of law. Are you looking at the Notice of Appeal right now? Correct, Your Honor. Okay. So tell me when you're – this is 2700? Okay. Correct, Your Honor. Or I have 2570. There's two spots, Your Honor. In the first portion, in the first paragraph, it reads, quote, and from all underlying orders, decisions, rulings, and opinions that are adverse to GTP. I believe that was the language that you were on.  I think the dispute here is whether an order that occurred after the final written decision is an underlying order. I think that's where your biggest hurdle is. Correct, Your Honor. And I think the underlying doesn't necessarily modify all of the different terms in that sentence. Well, it says, from the final written decision and from all underlying orders. Underlying what? Underlying the final written decision. Right, but then it lists other decisions in the same sentence. So my point is that underlying doesn't necessarily modify decisions, rulings, and opinions in the same sentence. In addition, at the final sentence of that same paragraph, in the middle of the page, we're also appealing the Board's factual findings, conclusions of law, or other determinations supporting or relating to the above issues. I'm sorry, where is that? You're at the bottom of that same page? Sorry, it's the bottom of the first paragraph on the same page. Oh, got it. And it reads, quote, the Board's factual findings, conclusions of law, or other determinations supporting or relating to the above issues. Okay. So I believe that language, to the extent there's a hangup on the first set of language, that language is broader and would encompass the requested relief for remand on additional discovery. One other brief issue I wanted to bring up in response to my counterpart's argument is the point that we did not raise RPI earlier in the case. The issue is that the PTAS precedential opinion in Shark Ninja actually tells us we're not allowed to unless there is a time bar or a stop window 315E1 is basically live at that point, which was not the case until the final written decision issued, which is why we did not seek this discovery earlier. All right. Thank you, counsel. This case is taken under submission.